Central National Bank of Cleveland, Executor of the Estate of W. G. Wilson, Deceased v. Commissioner.
Central Natl. Bank of Cleveland v. Commissioner
Docket No. 9961.
United States Tax Court
1942 Tax Ct. Memo LEXIS 19; 1 T.C.M. (CCH) 269; T.C.M. (RIA) 43058; 12/22/1942
*19 Walker H. Nye, Esq., for the petitioner. Thos. F. Callahan, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: In the above entitled proceeding the United States Board of Tax Appeals entered a decision redetermining the tax liability of the petitioner's decedent for the calendar years 1933 and 1934 pursuant to its Memorandum Opinion which held, inter alia, that petitioner's decedent did not derive taxable income during the period of June 15 to December 31, 1934 from four certain trusts, within the purview of section 166 of the Revenue Act of 1934. Upon petition for review the Commissioner of Internal Revenue conceded that such trust income was not taxable to the decedent under section 166 supra, but contended that it was taxable under section 22(a) of the Revenue Act of 1934. On brief, he agrees that the only issue involved here is whether the trust income is taxable to the petitioner under section 22(a), supra. The Board's decision was reversed and set aside by mandate of the United States Circuit Court of Appeals for the Sixth Circuit which remanded this proceeding to the Board of Tax Appeals for further hearing for the purpose of *20 allowing the petitioner to offer evidence on the issue of whether its decedent is taxable on the trust income in question under the provisions of section 22(a), supra, which issue was not presented to the Board in the original proceeding or considered by it in its original opinion herein. As to such issue a further hearing was had by the Board at which evidence thereon was submitted. The proceeding is now submitted to this Court upon the pleadings, a stipulation of facts, and certain exhibits introduced into evidence at the original hearing, as well as the testimony of certain witnesses given at the further hearing. The stipulation is incorporated herein as part of our findings of fact. As fully set forth in the stipulation herein the petitioner abandoned certain assignments of error as to the year 1934 and the respondent conceded certain errors in his determination as to both of the years 1933 and 1934. As to the petitioner's assignment of error in the respondent's disallowance of the amount of $3,298.70 as a deduction from gross income of a certain trust designated as L-798, on account of interest paid by that trust during the period of January 1, 1934 to June 14, 1934, the *21 net income of which trust for that period was taxable to the decedent for the year 1934, the prior holding of the Board that respondent erred in such disallowance, is herein reaffirmed. Effect to the stipulation of the parties and allowance of the said interest deduction of $3,298.70 will be given in the recomputation hereunder pursuant to Rule 50. There will be set forth herein only such portion of the facts as are deemed essential to consideration of the one question now at issue, namely, whether the income during the period June 15 to December 31, 1934 of the four trusts involved was taxable income to petitioner's decedent under section 22 (a), supra. Findings of Fact The petitioner is the duly qualified and acting executor of the estate of W. G. Wilson, who died testate on November 30, 1935. On January 3, 1921, the decedent by written instrument created a trust, designated as L-798, conveying to the Central National Bank Savings and Trust Co., of Cleveland, Ohio, as trustee, certain personal property for the benefit of his wife and his three children, with reservation to the grantor of the power to modify, alter, or revoke the trust upon written notice in a certain manner, *22 but in no event so as to provide for the receipt by the grantor of any part of the income during the existence of the trust. The trust instrument gave the trustee broad powers of control and management of the trust estate and the collection of all income and proceeds therefrom including the powers: * * * to sell, lease, transfer or exchange all or any part of said property * * * at such prices and upon such terms and conditions and in such manner as it may deem best, including the right, in case at any time any part of the Trust Estate shall consist of real property, to lease any such real property for any term of years or perpetually, irrespective of the period of the trust; * * * to invest and reinvest moneys coming into the possession of the Trustee * * * as the Trustee shall deem wise, * * * To retain by way of investment any property or securities transferred to it without liability for depreciation or loss. To determine whether money or property coming into its possession shall be treated as principal or income, * * * To compromise, compound and adjust claims in favor of or against the Trust Estate upon such terms and conditions as it may deem best. To * * * vote any stock *23 held [by it]. To employ suitable agents and attorneys and pay their reasonable compensation and expenses. * * * The trust instrument further provided that: "It is, however, understood and agreed that until the First Party [the grantor] shall indicate by writing filed with the Trustee that he does not desire to be so consulted, the Trustee will advise with the First party as to any sale, investment or reinvestment of the Trust Estate, or any part thereof, if the First Party shall be accessible, and in the opinion of the Trustee, in a condition to give such advise." [Brackets supplied.] The trust instrument further provided that the trustee should not be liable for any loss or damage whether resulting from depreciation of securities or otherwise, save only those resulting from its own neglect or willful default; that the grantor during his life could appoint some other trust company in Cleveland, Ohio, as trustee in lieu of any trustee theretofore appointed as trustee under the trust instrument. By a supplemental agreement executed on June 15, 1934, by the grantor, the beneficiaries, all of whom were adults, and a successor trustee, it was provided: that the entire net income of *24 the trust should, during the term of the trust, be distributed equally to grantor's three children, Robert W. G. Wilson, Margaret W. Dixon, and Ruth W. Ermini; that if the grantor was living at midnight on December 31, 1937, the trust should terminate and the entire trust estate be paid over to the grantor or be disposed of by the trustee as directed by the grantor, but if the grantor should die prior to midnight on December 31, 1937, then the trust should continue for a period of seven years after his death during which period the entire net trust income should continue to be distributed equally to the three children and at the end of the seven year period the then entire trust estate should be distributed equally to the three children or in case of their prior deaths to contingent remaindermen, not material here; and that the grantor had no power to alter, amend, modify, or revoke the trust or trust instrument as amended, prior to the date fixed for the termination of the trust. On December 31, 1920, by written instrument, the decedent created a trust designated as L-2623, conveying to The Union Trust Company, of Cleveland, Ohio, as trustee, certain property for the benefit of his *25 two daughters, Margaret and Ruth. On May 5, 1928, the decedent, by written instrument, created a trust designated as L-1528, conveying to the Central National Bank of Cleveland, as trustee, certain property for the benefit of his daughter Margaret. In each of two trust instruments the decedent grantor reserved the power to modify, alter, or revoke the trust upon written notice in a certain manner, but not so as to provide for receipt by the grantor of any part of the income during the duration of the trust. The trust instrument in trust L-2623 gave the trustee board powers of control and management of the trust estate including the power of investment, reinvestment, and the power to finally determine what was income and what was principal of the trust estate and to apportion gains and losses to principal of the trust estate and to apportion gains and losses to principal or income. The trust instrument in trust L-1528 gave the trustee therein powers of management and control identical with those given to the trustee in trust L-798. The provisions of each instrument in trust L-2623 and trust L-1528 with reference to the trustee's liability, with reference to the trustee consulting *26 the grantor in regard to any sale, investment, or reinvestment of the trust estate, and with reference to the grantor's powers to appoint some other trust company as trustee, are substantially the same as provided for in trust L-798. As to each of the two trusts L-2623 and L-1528, a supplemental agreement was executed on June 14, 1934, by the grantor, the beneficiaries, all of whom were adults, and successor trustee, respectively, whereby it was provided in each of the two trusts: that the entire net income be distributed to the grantor's three children, Margaret, Ruth, and Robert, until midnight on December 31, 1937, at which time the trust should terminate; that if the grantor was living at such termination the trust corpus then held by the trustee should be paid over to the grantor or be disposed of by the trustee as directed by grantor, but if the grantor should die prior to December 31, 1937, then the trust estate should be transferred to the trustee under trust L-798 and be held, managed, and disposed of under the terms of that trust as amended; and that the grantor would have no power to alter, amend, modify, or revoke the trust or trust instrument as amended prior to the date *27 fixed for the termination of the trust. On February 2, 1927, the decedent created a trust, designated as the W. G. Wilson Trust, conveying certain property to the Bankers Trust Company, of New York as trustee for the benefit of his son Robert, with reservation to the grantor to modify, alter, or revoke the trust upon written notice in a certain manner, but in no event so that he could receive any part of the income during the existence of the trust. The trust instrument creating the W. G. Wilson Trust gave the trustee powers "to receive, hold, manage, sell, invest and reinvest" the trust estate "in the manner hereinafter specified, and to collect, recover and receive the rents, issues, interest, income and profits thereof." The manner of the exercise of the trustee's powers over the trust estate was specified in the trust instrument, inter alia, as follows: (1) Any and all sales of property comprising the trust fund, or any part thereof, and all investments and reinvestments of the trust's funds "shall be made by the Trustee as directed by the party of the first part, [the grantor], and shall be subject to the control and written direction of the party of the first part, and *28 the Trustee shall be fully protected" and not liable for any loss incurred by reason of such directions, but if upon the request of the trustee for such directions the grantor should neglect or refuse to give them for a period of 30 days or unless the grantor was dead or was unable for any reason to give such direction with regard to investments and reinvestments, then in either of such events the trustee could exercise its own discretion with reference to such investments and reinvestments; (2) Subject to the control and written directions of the grantor the trustee could vote upon all stocks or other securities held by it, could exchange securities of any corporation, could consent to the reorganization, consolidation or merger of any corporation; could pay all assessments, subscriptions, and other sums of money for the protection of the interest of the trust as holder of any stocks, bonds, or other securities of any corporation, could exercise any option contained in any stocks, bonds, or other securities for the conversion of same into other securities; and could exercise any rights to subscribe for additional stocks, bonds, or other securities. The trust instrument further provided *29 that if the trustee should request of the grantor written instructions as to the action to be taken in regard to the matters set forth in (2) above and the grantor should neglect or refuse to furnish such directions for a period of 10 days, or in the event that the grantor should for any reason be unable to furnish such directions, or should the grantor be dead, the trustee could take such action in regard to such matters as it might deem proper and desirable. The trust income was to be distributed to a designated trustee for the benefit of grantor's son Robert until he reached the age of 35 years on September 21, 1939, at which time the trust corpus was to be distributed to Robert unless he should die prior to reaching that age, in which event the entire trust corpus was to be paid over to the grantor, or if the grantor was then deceased such corpus should be paid over to his estate. Under his reserved power to change the beneficiary the grantor, by written amendment, executed on June 14, 1934, directed that the entire net income of the trust be paid to his hereinabove mentioned three children, Margaret, Ruth, and Robert, in equal parts, and in the event of the death of either or *30 all of them, to other parties not material here. On June 15, 1934, Robert executed a written instrument whereby he transferred the interest in the trust corpus which he was to receive when he reached the age of 35 years to the grantor free from any trust and directed the trustee to distribute the entire trust corpus to the grantor, or his estate, when and if he, Robert, reached the age of 35 years. On June 16, 1934, the grantor (decedent) executed a written instrument whereby he relinquished all power to alter, amend, or revoke the trust as then in force. In each of the instruments providing for the above-mentioned four trusts it was provided that the trustee should receive at least 2 1/2 per cent commission on all gross income collected by it. During 1934 the petitioner's decedent lived at the Wade Park Manor, Cleveland, Ohio, and did not reside with any of his three children, each of whom was married and living with his or her spouse in a separate home. None of the children received any financial support from their father other than their respective shares of the income of the trusts. It required "considerable explaining" to her before Margaret Wilson Dixon would sign the agreements *31 supplemental to the trusts in which she was a beneficiary. The petitioner's decedent, the grantor of each of the four trusts involved, retained an interest in the corpus of each trust substantially equivalent to continuing ownership thereof, for tax purposes, during the taxable period in question. In his income tax return for the year 1934 the decedent reported the income of the above-mentioned four trusts for the period January 1, 1934 to June 14, 1934. The respondent has added to decedent's gross income for 1934 the income of those four trusts for the period June 15, 1934 through December 31, 1934 and of the amount so added $6,526.64 was income from dividends and $21,786.89 was the total other income of those trusts. Opinion As to each of the four trusts here in question and prior to the amendments thereto in June 1934, the grantor, petitioner's decedent, had reserved the power of revocation or modification in a specified manner, and the taxing of the income from such trusts to the grantor for the period January 1 to the middle of June 1934 is not questioned in this proceeding. The question now before us, pursuant to mandate, is whether the grantor remained, in substance, the *32 owner of the assets of the four trusts as amended on June 14 or 15, 1934, respectively, within the meaning of section 22(a) of the Revenue Act of 1934 and the rule announced in . Each of the four trusts was for a short term. Each of three of the trusts was for a term of approximately 3 1/2 years and upon the termination of each of the trusts the trust corpus thereof was to revert to the grantor or be disposed of as directed by the grantor or if the grantor died prior to the date fixed for such termination then the trust corpus was to be held in trust for a period of seven years for the benefit of the grantor's three children. The fourth, or W. G. Wilson Trust, was for a term of approximately 5 1/4 years and upon termination of such term on September 21, 1939 or in the event of the death of the grantor's son Robert prior thereto the trust corpus was to revert to the grantor or his estate. Unquestionably we have here short term trusts within the rule of the Clifford case. Furthermore, the income beneficiaries of each of the four trusts were the grantor's children and as such were members of his intimate family *33 group within the rule of the Clifford case for it is immaterial that they had become of age and the grantor had no legal duty to support them. , reversing ; , reversing ; and , reversing . Cf. ; ; and . In addition to those two essential factors of a short term trust with reversion of the corpus to the grantor and a reallocation of the income among members of the family group, there is present here, in our opinion, the factor of reserved power of management by the grantor, within the rule of the Clifford case. The grantor was not himself the trustee of any of the four trusts. However, as to the W. G. Wilson Trust, *34 he reserved complete control over the trust property through his power to direct any and all sales of the trust property and the investment and reinvestment of the trusts' funds and the trustee was relieved of liability for any loss incurred by reason of such directions. As to the other three trusts, the grantor reserved the power to substitute another corporate trustee and the trustee was required to advise with the grantor as to any sale, investment, or reinvestment of the trust property unless the grantor by writing indicated that he was not to be consulted or was inaccessible or incapacitated, none of which conditions is shown to have existed during the taxable years, and, further, the trustee was relieved of liability for any loss incurred other than from its own neglect or willful default. Being so required to advise with the grantor in the other three trusts there is little, if any, doubt that the trustee would have heeded such advice and been guided thereby since the grantor as reversioner at the end of a few years possessed the paramount interest in the trust corpus to be accounted for by the trustee at the end of those years. ; *35 Cf. ; and , cert. denied, . As a further reason why the trustee would be induced to adopt the advice of the grantor it is to be noted that if the trustee did so it was relieved of any liability provided the adoption of such advice would not constitute neglect or willful default on its part, while on the other hand if it refused, or failed to do so the grantor could supplant such trustee by another thereby depriving the supplanted trustee of its fees, or commissions, which were to be at least 2 1/2 per cent of the gross income of the trusts collected by it. It would thus appear that the grantor retained actual control over the investment and reinvestment of the trust corpus in each of the three other trusts as well as was done in the fourth, or W. G. Wilson Trust. We hold, and have so found as a fact, that during the taxable period in question the petitioner's decedent, the grantor of each of the four trusts involved, retained an interest in the corpus of each trust substantially equivalent to continuing ownership *36 thereof for tax purposes and that he is taxable on the income from such trusts under section 22 (a) of the Revenue Act of 1934. ;;;;;; ; ; and . Decision will be entered under Rule 50.